UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

IN RE MATTER OF THE APPLICATION OF B&C KB HOLDING GMBH FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM GOLDBERG LINDSAY & CO. LLC D/B/A LINDSAY GOLDBERG AND MICHAEL DEES

---

## DECLARATION OF DR. MICHAEL ROHREGGER IN SUPPORT OF THE APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

DR. MICHAEL ROHREGGER hereby declares as follows:

### I. Introduction

1. I am an attorney living and practicing law in Austria. I practice law at Rohregger Rechtsanwalts GmbH & Co KG. I am admitted to the Vienna Bar Association. My business address is Rotenturmstraße 17, 1010 Vienna, Austria. I speak German and English.

2. I am acting as counsel to B&C KB Holding GmbH ("B&C KB Holding" or the "Applicant"). In that capacity, I am assisting the Applicant with, among other things, the criminal investigation of suspected fraud and other crimes related to the acquisition by B&C KB Holding of an 80% interest in the Schur Flexibles Group (as defined below) from Lindsay Goldberg Europe GmbH ("LGE") and Atlas Flexibles Coöperatif U.A. ("AF Coop") (together, the "LG Sellers") for EUR 258.4 million and other consideration.[1]

---

[1] Specifically, B&C KB Holding acquired an 80% interest in Atlas Flexibles GmbH ("Atlas"). Atlas in turn directly owns 100% of Schur Flexibles GmbH ("SF"). SF directly owns 100% of Schur Flexibles Holding GmbH ("SF Holding"). SF Holding directly or indirectly holds majority interests in the numerous other affiliates. Atlas and its subsidiaries and affiliates collectively will be referred to as the "Schur Flexibles Group." The base purchase price was EUR 258.4 million. B&C KB Holding paid additional consideration to complete the acquisition as well, including a EUR 19.3 million shareholder loan and certain reimbursement payments.

3. Except as otherwise indicated, all the facts set forth in this Declaration (the "Declaration") are based upon my own personal knowledge or based upon my review of relevant documents. To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the laws of Austria as a practicing Austrian attorney.

4. I respectfully submit this Declaration in support of B&C KB Holding's Application for an Order pursuant to 28 U.S.C. § 1782 (the "Application") authorizing it to issue and serve subpoenas for documents, electronically stored information, and testimony from Goldberg Lindsay & Co., LLC ("Lindsay Goldberg") and Michael Dees ("Dees"), a Managing Partner at Lindsay Goldberg and Director of AF Coop.

5. The evidence requested in the Application is sought for use in a criminal investigation by state prosecutors in Austria into the aforementioned suspected fraud and other crimes.

## II.  Background

6. In 2021, B&C KB Holding acquired an 80% interest in the Schur Flexibles Group from the LG Sellers. B&C KB Holding says that thereafter, toward the end of December 2021, it has uncovered evidence of large-scale accounting fraud and misconduct at the Schur Flexibles Group, including but not limited to the material overstatement of earnings results for 2018 through 2020, misappropriation of company assets by Michael Schernthaner ("Schernthaner"), Managing Director at Atlas, SF Holding and several other companies within the Schur Flexibles Group and Michael Fischkin ("Fischkin"), Group Finance Director at the Schur Flexibles Group, and improper consulting agreements with evidence of kickbacks received by Schernthaner in some instances. As a result of this fraud and misconduct, B&C KB Holding says its EUR 258.4 million-plus investment is now virtually worthless.

2

### III. The Criminal Complaint Filed in Austria

7. SF Holding is located in Wiener Neudorf, Austria. Austrian authorities have jurisdiction over the investigation described below.

8. On or about March 2, 2022, SF Holding's counsel filed a complaint with the Zentrale Staatsanwaltschaft zur Verfolgung von Wirtschaftsstrafsachen und Korruption (Central Public Prosecutor's Office for the Prosecution of Economic Crimes and Corruption) ("WKStA"). On or about March 8, 2022, SF Holding's counsel filed an addendum. On or about March 31, 2022, SF Holding's counsel filed a second addendum. The complaint and both addenda will be referred to as the "Austrian Criminal Complaint."

9. The following (paragraphs 10 through 20) presents a summary of the allegations contained in the Austrian Criminal Complaint. In the interest of preserving the integrity of the investigative process and compliance with the EU General Data Protection Regulation ("GDPR"), I am not attaching the Austrian Criminal Complaint.

10. The misconduct by Schernthaner alleged in the Austrian Criminal Complaint may give rise to charges of, among others, a breach of trust in violation of § 153(1) in conjunction with paragraph (3) second alternative of the Austrian Criminal Code. The alleged misconduct by Fischkin may give rise to charges of, among others, a breach of trust in violation of § 153(1) in conjunction with paragraph (3) second alternative of the Austrian Criminal Code; being a contributor within the meaning of § 12 of the Austrian Criminal Code, and fraud in violation of §§ 146, 147(3), and 148 of the Austrian Criminal Code.

### IV. Fraud and Misconduct Allegations in the Austrian Criminal Complaint

11. Among other allegations, the Austrian Criminal Complaint states that in July 2021, EUR 4 million were transferred from SF Holding's bank account to a newly opened subaccount

3

of SF Holding. Schernthaner together with Fischkin as the only authorized signatories of the subaccount had had the authorization to look into the account and make drawings. Subsequently, the amount of EUR 4 million was transferred to a bank account of Schernthaner without any business purpose or justification, whereas Schernthaner and Fischkin were attempting to cover up this payment.

12. The Austrian Criminal Complaint also alleges that on or about November 29, 2021, Schernthaner and Fischkin rented on behalf and for account of SF Holding two luxury apartments at Mayfair House in London for personal use and caused SF Holding to pay a deposit of GBP 280,000 and one year rent of GBP 1,820,000, payable in advance, without any business purpose or justification and without the knowledge or consent of SF Holding. Because the leases can probably not be terminated until November 30, 2023, SF Holding may suffer damages of at least EUR 6 million, provided that the termination of the contract proves possible after the expiry of two years.

13. The Austrian Criminal Complaint alleges that Schernthaner and Fischkin hired an interior designer "Studio Miaki Ltd." to furnish the apartments and caused SF Holding to pay to GBP 998,900 Studio Miaki Ltd. without any business purpose or justification. Fischkin together with Conny Stöhrer, a former Head of Group Controlling and Reporting at SF Holding and a close confidant of Schernthaner ("Stöhrer"), approved the transaction and attempted to conceal the transactions by removing the names as well as the details of the apartments from the invoices, by changing the invoice text and by splitting the sum over several invoices.

14. The Austrian Criminal Complaint alleges that Schernthaner and Fischkin engaged Velvet Lifestyle and Portland Office Ltd. in relation with these two apartments. Whereas Velvet Lifestyle was engaged to hire housekeeping staff to work at the Mayfair apartments and caused SF

4

Holding to pay EUR 52,000 to Velvet Lifestyle, Portland Office Ltd. was entrusted with the acquisition of the object for which SF Holding paid GBP 351,830. Both bank transfers occurred without any business purpose or justification. Again, Fischkin attempted to conceal the transactions.

15. The Austrian Criminal Complaint alleges that in 2019–2021, Schernthaner moreover spent EUR 883,956.66 of SF Holding's funds on personal expenses without any business purpose or justification. These personal expenses included gaming laptops, various other private expenditures, and private travel.

16. The Austrian Criminal Complaint alleges that Fischkin twice asked two separate clothing shops to issue pro forma invoices to SF Holding with the description "Refinancing Green TLB meetings/even [sic] management" instead of listing the clothing Fischkin intended to purchase.

17. The Austrian Criminal Complaint alleges that in 2019–2021 Schernthaner, Fischkin and Stöhrer were overpaid EUR 8,028,487.04 in compensation without justification.

18. The Austrian Criminal Complaint alleges that in 2017–2021 Schernthaner entered into questionable consultancy contracts (sometimes with the countersignature of Fischkin) or arrangements with, amongst others, ALLEGRO Consulting GmbH ("Allegro"), "Beyond People" Personal- und Unternehmensberatung GmbH & Co KG ("Beyond People"), GLASFORD International Austria GmbH ("Glasford"), BKlemen Beteiligungsgesellschaft mbH, BKlemen Consulting GmbH, and Stern Stewart & Co. Ltd. ("Stern Stewart"). It appears that Dr. Thomas Unger of LGE facilitated the engagement of Stern Stewart, and that Stern Stewart was involved in the EBITDA Improvement and other projects.

5

19. The Austrian Criminal Complaint alleges that in the case of Allegro, Beyond People and Glassford, there is evidence that Schernthaner received kickbacks. With respect to most contracts, Schernthaner lacked authority to enter into the agreements without approval by resolution of the Advisory Board because the agreements were for more than EUR 200,000 per year, and no resolutions were issued.

20. The Austrian Criminal Complaint alleges that as a result of the payments on the improper contracts, SF Holding suffered damages of EUR 5,541,870.

## V. The Prosecutor's Criminal Investigation

21. The Prosecutor has commenced and is actively conducting a criminal investigation.

22. According to § 2(1) of the Austrian Code of Criminal Procedure ("CCP"), the Prosecutor is obligated to investigate any initial suspicion ("Anfangsverdacht") of a criminal offence that comes to his or her knowledge (unless it is an offence that is only to be prosecuted at the request of an authorized person; however, that exemption does not apply in the present case).

23. When the Prosecutor receives a victim's complaint, the Prosecutor determines if an Anfangsverdacht exists. If it does, the Prosecutor is obligated to investigate, and to initate the next stage of the investigation ("Ermittlungsverfahren"), i.e. active investigation. This stage may usually last from several months to several years.

24. If, after finishing all investigations, sufficient grounds for suspicion exist, the Prosecutor is obligated to file charges against the suspect.

25. The investigation of crimes at the Schur Flexibles Group is currently in the Ermittlungsverfahren stage of the process.

26. The criminal police on the order of the Prosecutor already conducted searches of the homes of Schernthaner, Fischkin, and Stöhrer, and seized some assets.

### VI. Discovery Obtained through Section 1782 Is Usable in the Austrian Investigation and in Court

27. I have reviewed the proposed subpoenas submitted in connection with this Application. The subpoenas call for documents and deposition testimony that would be relevant to the Austrian criminal investigation described above.

28. B&C KB Holding will be able to, and intends to, submit evidence obtained in response to the proposed subpoenas, including documents and deposition transcripts, to the Prosecutor in the ongoing Austrian criminal investigation.

29. According to § 3(1) of the CCP, the Prosecutor - ex officio - has to investigate the truth and clarify all facts that are important for assessing the offence. There are very few restrictions or requirements on how and from what source any evidence that is relevant for the case comes from.

30. Furthermore, if charges are brought, the court in Austria will be able to consider the evidence provided by B&C KB Holding, including evidence obtained in response to the proposed subpoenas.

31. The involvement in or awareness of the misconduct at the Schur Flexibles Group of any person, including Lindsay Goldberg and Dees, will be relevant to the ongoing criminal investigation, and the Prosecutor will be obligated to consider any evidence submitted by B&C KB Holding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 7/13/22.
Vienna, Austria

_____
Dr. Michael Rohregger