UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| |
|---|
| IN RE MATTER OF THE APPLICATION OF B&C KB HOLDING GMBH FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782 FROM GOLDBERG LINDSAY & CO. LLC D/B/A LINDSAY GOLDBERG AND MICHAEL DEES |

### DECLARATION OF DR. JAKOB DANCKERT IN SUPPORT OF THE APPLICATION FOR AN ORDER TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782

DR. JAKOB DANCKERT, hereby declares as follows:

I.   **Introduction**

1.   I am an attorney living and practicing law in Germany at Danckert Bärlein & Partner Rechtsanwälte. I am admitted to the Berlin Bar Association. My business address is Meierottostraße 1, D-10719 Berlin, Germany. I speak German and English.

2.   I am acting as counsel to B&C KB Holding GmbH ("B&C KB Holding" or the "Applicant"). In that capacity, I am assisting the Applicant with, among other things, the criminal investigation of suspected fraud and other crimes related to the acquisition by B&C KB Holding of an 80% interest in the Schur Flexibles Group (as defined below) from Lindsay Goldberg Europe GmbH ("LGE") and Atlas Flexibles Coöperatif U.A. ("AF Coop") (together, the "LG Sellers") for a purchase price of approximately EUR 258.4 million and other consideration.[1] I have also filed a criminal complaint with the Staatsanwaltschaft Düsseldorf (the Düsseldorf Public Prosecutor's

---

[1] Specifically, B&C KB Holding acquired an 80% interest in Atlas Flexibles GmbH ("Atlas"). Atlas in turn directly owns 100% of Schur Flexibles GmbH ("SF"). SF directly owns 100% of Schur Flexibles Holding GmbH ("SF Holding"). SF Holdings directly or indirectly holds majority interests in the numerous other affiliates. Atlas and its subsidiaries and affiliates collectively will be referred to as the "Schur Flexibles Group." The base purchase price was EUR 258.4 million. B&C KB Holding also had to make additional payments to complete the acquisition.

1

Office) (the "Prosecutor") in Düsseldorf, Germany ("German Criminal Complaint") on behalf of the Applicant.

3. Except as otherwise indicated, all the facts set forth in this Declaration (the "Declaration") are based upon my own personal knowledge or based upon my review of relevant documents. To the extent matters stated in this Declaration are statements of legal opinion, such statements represent my view of the laws of Germany as a practicing German attorney.

4. I respectfully submit this Declaration in support of B&C KB Holding's Application for an Order pursuant to 28 U.S.C. § 1782 (the "Application") authorizing it to issue and serve subpoenas for documents, electronically stored information, and testimony from Goldberg Lindsay & Co., LLC ("Lindsay Goldberg") and Michael Dees, a Managing Partner at Lindsay Goldberg and Director of AF Coop ("Dees").

5. The evidence requested in the Application is sought for use in a criminal investigation by state prosecutors in Germany into the aforementioned suspected fraud and other crimes.

**II.    Background**

6. In 2021, B&C KB Holding acquired an 80% interest in the Schur Flexibles Group from the LG Sellers. After the acquisition, toward the end of December 2021, B&C KB Holding uncovered evidence suggesting serious misconduct at the Schur Flexibles Group, including (but not limited to) the material overstatement of earnings results for 2018 through 2020, misappropriation of company assets by Michael Schernthaner ("Schernthaner"), the CEO (Geschäftsführer) at Atlas, SF Holding, and several other companies within the Schur Flexibles Group, and Michael Fischkin ("Fischkin"), Group Finance Director at the Schur Flexibles Group,

and improper consulting agreements with evidence of kickbacks received by Schernthaner in some instances.

7.   In January 2022, Alvarez & Marsal Disputes and Investigations GmbH ("A&M") and KPMG were engaged to conduct investigations. B&C KB Holding has received A&M's and KPMG's reports of such investigatons. As a result of the alleged fraud and misconduct, B&C KB Holding's 2021 EUR 258.4 million-plus equity investment in Schur was, in reality, virtually worthless. Indeed, the equity value is believed to actually have been negative.

### III. The Criminal Complaint Filed in Germany

8.   LGE is located in Düsseldorf, Germany. German authorities have jurisdiction over the investigation described below.

9.   On April 29, 2022, on behalf of B&C KB Holding, I filed the German Criminal Complaint against Thomas Unger ("Unger") with the Prosecutor for potential violations of the German criminal and commercial codes relating to Unger's potential awareness of, and involvement in, the criminal conduct at the Schur Flexibles Group.

10.   The following (paragraphs 11 through 28) presents a summary of the allegations contained in the German Criminal Complaint. In the interest of preserving the integrity of the investigative process and compliance with the EU General Data Protection Regulation ("GDPR"), I am not attaching the German Criminal Complaint.

11.   The misconduct by Unger alleged therein may give rise to charges or claims of fraud in a particularly serious case in violation of § 263 of the German Criminal Code; aiding and abetting misrepresentation in violation of § 331 of the German Commercial Code; false statements in violation of § 82 of the German Limited Liability Company Act; aiding and abetting embezzlement in a particularly serious case in violation of §§ 27 and 266 of the German Criminal

Code; corruption in business dealings in violation of § 299 of the German Criminal Code; and other charges or claims.

## IV. Allegations of Misconduct and Fraud in the German Criminal Complaint

### i. Lindsay Goldberg Acquires the Schur Flexibles Group and Thereafter Begins to Market It for Sale

12. On July 25, 2016, Lindsay Goldberg announced that it had agreed to acquire the Schur Flexibles Group, a leading manufacturer of flexible packaging products in Europe across a range of end markets including meat and cheese, confectionary, pharmaceutical specialties, and tobacco. Upon information and belief, that investment was held by the LG Sellers: LGE and AF Coop.

13. In February 2017, Thomas Unger joined LGE as a Managing Partner and became the Chairman of the Advisory Board of SF Holding around the same time. Unger had previously been CEO of another major flexible packaging manufacturer headquartered in Vienna, Austria, named Constantia Flexibles Group GmbH ("Constantia").

14. Shortly thereafter, three other individuals left Constantia and joined SF Holding: (i) Schernthaner became the Chief Financial Officer of SF Holding in May 2017 and was promoted to CEO in May 2019; (ii) Fischkin became Senior Finance Manager of SF Holding in April 2017 and was promoted to Group Finance Director in July 2019; and (iii) Conny Stöhrer ("Stöhrer") joined SF Holding in April 2017 and was promoted to Head of Group Controlling and Reporting in September 2019. Upon information and belief, Unger played a role in the hiring of Schernthaner, Fischkin, and Stöhrer. All these individuals were involved in the activities at the Schur Flexibles Group that may give rise to criminal charges in Germany and Austria.

15. Upon information and belief, throughout his tenure, Unger had a close working relationship with Schernthaner and often engaged in management decisions, becoming effectively

a co-leader alongside Schernthaner rather than properly fulfilling his supervisory duties as the Chairman of the Advisory Board.

16. For example, from mid-2017 through 2021, Unger and Schernthaner exchanged more than 4,500 e-mails, an average of four e-mails per day, with 2,500 of those being without anyone else being copied and often from private rather than company e-mail addresses.

17. Furthermore, sometime in early 2020, a decision was evidently made (presumably by Unger and Scherthaner) to discontinue documentation of all meetings and decision-making of the Advisory Board (for which Unger served as Chairman and on which Dees served as a member from, upon information and belief, January 2017 to September 2021).

18. Correspondence between Unger and Schernthaner indicates that they deliberately preferred to keep it that way. Applicant later uncovered, as discussed further below, evidence that supports criminal investigations into accounting fraud and other misconduct that was occurring at the Schur Flexibles Group.

19. In 2019, Lindsay Goldberg attempted to sell the Schur Flexibles Group. Upon information and belief, Lindsay Goldberg referred to that plan as "Project Sky" and marketed the Schur Flexibles Group, with Goldman Sachs as its investment banker, to a number of market participants, including Applicant. However, in January 2020, shortly before closing, a final bidder withdrew, and the sale was aborted. Applicant's post-acquisiton investigation revealed that the bidder reportedly had concerns about the EBITDA adjustments.

   **ii. B&C KB Holding Acquires the Schur Flexibles Group from LGE and AF Coop**

20. Lindsay Goldberg began to market the Schur Flexibles Group for sale again in 2021. In January 2021, through the mediation of Horst Bernegger ("Bernegger") of

5

PricewaterhouseCoopers Österreich GmbH Wirtschaftsprüfungsgesellschaft ("PwC"),[2] Unger and Schernthaner contacted a board member of B&C Private Foundation in order to negotiate a sale of the majority shares of the Schur Flexibles Group. Lindsay Goldberg's Managing Partner Dees was also closely involved in the later sales negotiations.

21.   Unger, Schernthaner, and Bernegger courted B&C KB Holding with an agreement that initially resulted in an exclusive acquisition opportunity instead of a traditional merger and acquisition ("M&A") auction. In return, the LG Sellers demanded that there be a fast-track acquisition process and a due diligence period of only three weeks. In the course of the due diligence, Unger and Schernthaner declined a number of B&C KB Holding's inquiries on the purported grounds that there was not enough time for such "deep dives" and that the exclusivity agreement for B&C KB Holding had limited duration.

22.   Additionally, Unger emphasized that Schernthaner was of central importance to the deal and to an eventual IPO, and that it would be better not to annoy him with any inquiries, because otherwise, there was a risk that he would block a takeover by B&C KB Holding or leave the company. Therefore, the organization within the Schur Flexibles Group seemed to be strongly tailored to Schernthaner, who in turn, regularly coordinated with Unger as Chairman of the Advisory Board.

23.   On March 19, 2021, B&C KB Holding made a non-binding offer to Lindsay Goldberg. B&C KB Holding ultimately decided to enter into an agreement based in large part on the Schur Flexibles Group's stated EBITDA, a key metric for valuation purposes. As discussed

---

[2] In 2017, the Schur Flexibles Group changed auditors from Ernst & Young to PwC, shortly after Schernthaner and Fischkin joined. The change is believed to have been recommended by Schernthaner and Fischkin and approved by the Advisory Board. B&C is not aware of any evidence that other accounting firms submitted proposals or were considered. There is evidence that Fischkin obtained a presentation from Constantia listing a detailed comparison of the services offered by PwC, Deloitte and Ernst & Young and simply changed the title of the presentation to appear as if the accounting firms' proposals were made to the Schur Flexibles Group instead of Constantia.

6

below, B&C KB Holding later discovered that the stated EBITDA and other financial metrics were inflated and that, therefore, the Schur Flexibles Group was worth substantially less than what B&C KB Holding agreed to pay.

24. On or about May 15, 2021, B&C KB Holding agreed to acquire the Schur Flexibles Group from LGE and AF Coop for EUR 258.4 million by entering into the Share Purchase Agreement ("SPA"). On or about September 30, 2021, the parties closed the deal.

### iii. B&C KB Holding Uncovers Accounting Fraud, Embezzlement, and Misconduct at the Schur Flexibles Group

25. On December 21 and 22, 2021, Schernthaner and Fischkin, respectively, were terminated from their employment over Unger's objections.

26. In January 2022, two firms, KPMG and Alvarez & Marsal Disputes and Investigations GmbH, were commissioned to investigate. The investigators have made the following findings (as alleged in greater detail in the German Criminal Complaint and the reports by KPMG and Alvarez & Marsal attached thereto):

   a. The Schur Flexibles Group's financial statements for 2018, 2019 and 2020 were false and did not reflect the true financial situation. For example, the financial statements stated that 2018 EBITDA was approximately EUR 73 million, but according to KPMG the actual 2018 EBITDA was approximately EUR 23.9 million, such that 2018 EBITDA was overstated by approximately EUR 49.1 million; the financial statements stated that 2019 EBITDA was approximately EUR 82.8 million, but according to KPMG the actual 2019 EBITDA was approximately EUR 15.9 million, such that 2019 EBITDA was overstated by approximately EUR 66.9 million; and the financial statements stated that 2020 EBITDA was approximately EUR 78.8 million, but according to KPMG the actual 2020 EBITDA

7

was approximately EUR 33.2 million, such that 2020 EBITDA was overstated by approximately EUR 45.6 million. Therefore, B&C KB Holding is a victim and suffered damages.

b. KPMG identified the following categories of manipulation of accounting entries that resulted in material incorrectness:

   i. Unjustified capitalization of fixed assets;

   ii. Unjustified capitalization of inventories and receivables;

   iii. Offsets to the parent company without a documented legal basis;

   iv. Unjustified reclassification of expense in the income statement to areas outside the operating result;

   v. Miscellaneous other entries (*e.g.*, new entry of business transactions already recorded in the individual Group companies).

c. For example, when expenses were improperly recorded as capital expenditures instead of operating expenses, those transactions made EBITDA appear artificially high. Operating expenses are deducted from income and therefore reduce EBITDA. However, because capital expenditures do not affect EBITDA, mischaracterizing operating expenses as capital expenditures artificially inflates EBITDA. This in turn caused the inflated purchase price.

d. A&M found strong indications that the tender process, in which PwC was selected as successor to the prior auditor Ernst & Young, was manipulated. For example, there is no evidence that Ernst & Young submitted a bid or that KPMG was considered. Thus, PwC was the only bidder. Dees signed the formal resolution appointing PwC as auditor for the consolidated financial statements of Atlas.

    Schernthaner maintained a close personal relationship with the PwC partner handling the Schur Flexibles Group's account; dictated to him how capitalization was to be viewed; and asked him to help Unger's daughter receive a student placement at PwC, which the daughter did receive. In all, PwC did not apply proper scrutiny to the Schur Flexibles Group.

e. With respect to the allegations in subparagraphs (f) through (j), the German Criminal Complaint incorporates SF Holding's criminal complaint and two supplements filed in Austria on March 1, 8, and 31, 2022.

f. In 2021, Schernthaner and Fischkin collusively misappropriated more than EUR 4.8 million from SF Holding.

g. In 2021, Schernthaner and Fischkin entered into leases for two luxury apartments at Mayfair House in London for personal use and without justification or authority and caused SF Holding to pay a deposit of GBP 280,000 and one year rent of GBP 1,820,000, payable in advance, without any business purpose or justification and without the knowledge or consent of SF Holding. Because the leases can probably not be terminated until November 30, 2023, SF Holding may suffer damages of at least EUR 6 million, provided that the termination of the contract proves possible after the expiry of two years.

h. In 2021, Schernthaner and Fischkin entered into contracts with vendors to furnish and hire staff for the Mayfair House apartments, for their personal use, and caused SF Holding to spend EUR 1,662,411 without justification or authority.

i. In 2019–2021, Schernthaner, Fischkin, and Stöhrer were overpaid EUR 8,028,487.04 in compensation without justification or authority.

j.  In 2017–2021, Schernthaner and Fischkin entered without authority into multiple questionable consultancy contracts with vendors. In the case of three vendors, there is evidence of Schernthaner receiving kickbacks. For instance, it appears that Unger and LGE facilitated the engagement of Stern Stewart & Co. Ltd., which was engaged in the EBITDA improvement and other projects. In the case of at least two vendors, there is evidence of Schernthaner may have received kickbacks. As a result of the payments on the improper contracts, SF Holding suffered damages of EUR 5,541,870.

27.  Pre-acquisition misconduct was not disclosed to B&C KB Holding.

**V.  The Public Prosecutor's Criminal Investigation**

29.  According to § 152 (2) of the German Code of Criminal Procedure, the Prosecutor is obligated to act in all cases of pursuable criminal offenses where there is sufficient factual indication of a criminal offense. This initial suspicion ("Anfangsverdacht") exists when there are concrete factual indications which, according to criminalistic experience, make the suspect's involvement in criminal activity possible.

30.  A victim's filing of a criminal complaint automatically triggers an investigation into whether an Anfangsverdacht exists.

31.  If an Anfangsverdacht exists, according to the so-called principle of legality pursuant to §§ 152 (2), 170 (1) of the Code of Criminal Procedure, the Prosecutor is obligated to initiate further investigation.

32.  The Düsseldorf Public Prosecutor's Office opened an investigation which is currently ongoing. The fact that the German Criminal Complaint triggered the Prosecutor to initiate an investigation under the filing number 120 Js 608/22 shows that an Anfangsverdacht

exists. Therefore, the Prosecutor now has a duty to investigate the facts pursuant to § 160 (1) of the Code of Criminal Procedure.

### VI.  Discovery Obtained through Section 1782 Is Usable in the German Investigation and in Court

33.  I have reviewed the proposed subpoenas submitted in connection with this Application. The subpoenas call for documents and deposition testimony that would be relevant to the German criminal investigation described above.

34.  B&C KB Holding will be able to and intends to submit evidence obtained in response to the proposed subpoenas, including documents and deposition transcripts, to the Prosecutor. In addition, under § 403 of the German Criminal Code, B&C KB Holding may also apply to join civil claims for relief in the criminal proceeding, anticipates doing so, and would use evidence obtained in response to the proposed subpoenas in connection therewith.

35.  The Prosecutor is not prohibited from and usually receives and evaluates all evidence provided.

36.  Furthermore, if charges are brought, the court in Germany will be able to consider the evidence provided by B&C KB Holding, including evidence obtained in response to the proposed subpoenas.

37.  Potential involvement in or awareness of the misconduct at the Schur Flexibles Group of any person, including Lindsay Goldberg and Dees, will be relevant to the ongoing criminal investigation, and the Prosecutor will receive and consider the evidence.

*[Remainder of page intentionally left blank. Signature page to follow.]*

11

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Executed on 07/13/22.
Berlin, Germany

_____
Dr. Jakob Danckert