**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------X

In re: the ex parte application of
B&C KB HOLDING GMBH,

                Applicant,                       **OPINION & ORDER**

For an order pursuant to 28 U.S.C. § 1782         22-mc-00180 (LAK) (VF)
permitting Applicant to issue subpoenas in aid
of foreign proceedings to:

GOLDBERG LINDSAY & CO. LLC d/b/a
LINDSAY GOLDBERG, and MICHAEL
DEES,

                Respondents.

-----------------------------------------------------------X

**VALERIE FIGUEREDO, United States Magistrate Judge.**

      Petitioner B&C KB Holding GmbH ("B&C") filed this application seeking an order under 28 U.S.C. § 1782, authorizing it to serve subpoenas on Michael Dees and Goldberg Lindsay & Co. LLC ("Lindsay Goldberg" and, collectively with Dees, the "Respondents").[1] See ECF Nos. 1 (the "Application"), 4-8, 26-30, 39-40. B&C contends that the records sought in the proposed subpoenas are relevant to two criminal proceedings, one pending in Austria and the other in Germany. Respondents oppose the application. See ECF Nos. 20-21, 23-24, 34-35, 37-38. For the reasons that follow, the application is **GRANTED**.

---

      [1] The application was filed *ex parte* on July 14, 2022. See ECF No. 1. But the same day that the application was filed, counsel for B&C sent counsel for Respondents a copy of the Section 1782 application. See ECF No. 26 at 7. On July 15, 2022, counsel for Respondents filed a letter-motion seeking leave to oppose the application. ECF No. 10. On July 19, 2022, B&C consented to Respondents' request to oppose the Section 1782 application. ECF No. 13.

**BACKGROUND**

A. Factual Background

B&C is a private company located in Vienna, Austria that is indirectly wholly owned by B&C Privatstiftung, an Austrian private foundation. Decl. of Thomas Zimpfer ("Zimpfer Decl.") ¶ 4, ECF No. 6. Respondent Lindsay Goldberg is a private equity firm with its principal place of business in New York City. Decl. of Zachary D. Rosenbaum ("Rosenbaum Decl.") ¶¶ 5-8, ECF No. 8. Respondent Dees, who is believed to reside and work in Manhattan, is a Managing Partner at Lindsay Goldberg. Id. ¶¶ 10-13.

On September 30, 2021, B&C, pursuant to a Share Purchase Agreement ("SPA"), acquired an 80% stake in Schur Flexibles Group ("Schur"), a manufacturer of flexible packaging products based in Austria, from Atlas Flexibles Cooperatief U.A. ("AF Coop") and Lindsay Goldberg Europe GmBH ("LGE") for a purchase price of EUR 258.4 million.[2] See Zimpfer Decl. ¶¶ 5-7; Application at ¶¶ 8, 24, ECF No. 1; Decl. of Jakob Danckert ("Danckert Decl.") ¶¶ 2, 24, ECF No. 7; see also Decl. of Jooyoung Yeu ("Yeu Decl.") Ex. 2, ECF No. 21-2. The SPA required that all disputes "arising out of or in connection with" the SPA "shall be finally settled in accordance with the Arbitration Rules of the German Arbitration Institute (DIS) without recourse to the ordinary courts of law." Yeu Decl., Ex. 2 ¶ 31.2.

Around January 2022, B&C discovered evidence that Michael Schernthaner, the Chief Executive Officer of SF Holding, and Michael Fischkin, the Group Finance Director at SF Holding, had misappropriated company assets and that Schur had materially overstated its

---

[2] Specifically, B&C acquired an 80% interest in Atlas Flexibles GmbH ("Atlas") and Atlas, in turn, directly owns 100% of Schur Flexibles GmbH ("SF"); SF directly owns 100% of Schur Flexibles Holding GmbH ("SF Holding"). See Decl. of Michael Rohregger ("Rohregger Decl.") ¶ 2 n.1, ECF No. 5; see also Application at 1 n.1.

earnings results for 2018 through 2020. See Application ¶¶ 6, 26. Fischkin and Schernthaner were terminated from their employment. Id. ¶ 25.

SF Holding is located in Austria and in March 2022, it filed a criminal complaint with the Central Public Prosecutor's Office for the Prosecution of Economic Crimes and Corruption. Rohregger Decl. ¶¶ 2 n.1, 7-8. The allegations in the Austrian criminal complaint concern Schernthaner's and Fischkin's alleged conduct and specifically raise allegations of fraud, misconduct, manipulation of financial statements, and acceptance gifts and bribery of officials. Id. ¶¶ 10-20; Application ¶¶ 27-28. B&C represents that it intends to submit additional evidence to the Austrian authorities to ensure that the scope of the investigation includes potential crimes against B&C. Rohregger Decl. ¶¶ 28-30; Application ¶ 27.

In April 2022, B&C filed a criminal complaint with the Dusseldorf Public Prosecutor's Office in Dusseldorf, Germany. Danckert Decl. ¶¶ 2, 9; see also Application ¶ 28. The German criminal complaint concerns Thomas Unger, a Managing Partner at LGE and Chairman of the Advisory Board of SF Holding, and relates to his involvement or awareness of the criminal conduct at Schur. Danckert Decl. ¶¶ 9-18; Application ¶ 17. B&C also intends to submit evidence obtained in response to the proposed subpoenas to the German prosecutor. Danckert Decl. ¶¶ 33-34.

On August 12, 2022, B&C filed a request for arbitration against Atlas and LGE, pursuant to the terms of the SPA. See Yeu Decl., Ex. 1, ECF No. 21-1.

B. The Instant Application

On July 14, 2022, B&C filed the instant application, seeking discovery against Respondents in connection with the Austrian and German Criminal Proceedings. See ECF Nos. 1, 4-9. B&C seeks authorization to issue four subpoenas, two to Lindsay Goldberg and two to

Dees. See Rosenbaum Decl. at Exs. A-D. The subpoenas seek documentary evidence as well as the depositions of Dees and a representative of Lindsay Goldberg.

By order dated July 20, 2022, the application was referred to the undersigned for resolution. See ECF No. 15. I have authority to decide the request for discovery under Section 1782 because it is a non-dispositive matter. See, e.g., In re Hulley Enters., Ltd., 358 F. Supp. 3d 331, 341-42 (S.D.N.Y. 2019), aff'd, 400 F. Supp. 3d 62 (S.D.N.Y. 2019) (application brought under Section 1782 is "non-dispositive" matter within meaning of Federal Rule of Civil Procedure 72(b)).

On August 30, 2022, Respondents filed an opposition to the application, to which B&C replied on September 20, 2022. See ECF Nos. 20-21, 23-24, 26-30. After further supplemental briefing from the parties (see ECF Nos. 34-35, 37-40), the Court held oral argument on the application on November 21, 2022. See Hearing Transcript ("Tr."), ECF No. 41. On December 13, 2022, B&C submitted a letter informing the Court of a development in the Austrian and German criminal proceedings. ECF No. 43. The letter informed the Court that the Austrian criminal proceeding now also included an investigation of Thomas Unger—who was already under investigation by the German prosecutor—for fraud and other criminal acts. Id. at 1.

## DISCUSSION

Under 28 U.S.C. § 1782,

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a).

A district court has jurisdiction to grant an application under Section 1782 if the following statutory requirements are met: "(1) the person from whom discovery is sought resides or is found within the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the application is made by a foreign or international tribunal or any interested person." Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP, 895 F.3d 238, 243 (2d Cir. 2018) (cleaned up); see also In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 192 (S.D.N.Y. 2006) (citing Schmitz v. Bernstein, Liebhard & Lifshiftz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)); Federal Republic of Nigeria v. VR Advisory Servs., Ltd., 27 F.4th 136, 148 (2d Cir. 2022). Additionally, the statute requires that the discovery not be "in violation of any legally applicable privilege." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 97 (2d Cir. 2020) (quoting 28 U.S.C. § 1782(a)); In re Guo, 965 F.3d 96, 102 n.3 (2d Cir. 2020) ("While our case law has often focused on the[ ] three elements" stated above, "the statute also imposes other requirements, including that the discovery not be 'in violation of any legally applicable privilege.'").

Provided that the statutory requirements in Section 1782 are met, the Court must then determine, in its discretion, whether the discovery should be permitted. Kiobel, 895 F.3d at 244; Federal Republic of Nigeria, 27 F.4th at 148. The Supreme Court has identified four discretionary factors (referred to as the Intel factors) that a court considers when ruling on a Section 1782 request: (1) whether the person from whom the discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the

United States; and (4) whether the Section 1782 application contains unduly intrusive or burdensome discovery requests. See Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004). Courts must exercise their discretion in light of the "twin aims" of Section 1782: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar means of assistance to our courts." Id. at 252 (citation omitted).

    A. *B&C's application satisfies the statutory requirements under Section 1782.*

As explained below, B&C has satisfied all three statutory requirements under Section 1782.

    *1. Respondents are found in this District.*

First, Respondents can be found in the Southern District of New York. Lindsay Goldberg is headquartered in Manhattan, and Dees resides and works in Manhattan. See Rosenbaum Decl. ¶¶ 6, 9-13. Respondents do not contend otherwise. The first statutory factor is therefore satisfied.

    *2. B&C is an "interested person" under Section 1782.*

B&C is an "interested" party under Section 1782, and, here too, Respondents raise no argument to the contrary. In Intel, the Supreme Court indicated that a "complainant" who had "a significant role" in an antitrust investigation, including "the right to submit information" during the investigation was an "interested person" within the meaning of Section 1782. 542 U.S. at 256. Although Intel concerned an antitrust investigation, courts have applied its holding in the context of a criminal investigation. See, e.g., In re Berlamont, No. 14-MC-00190 (JSR), 2014 WL 3893953, *1 (S.D.N.Y. Aug. 4, 2014), aff'd, 773 F.3d 456 (2d Cir. 2014) (complaining witness in Swiss criminal investigation was an interested party); In re Berlamont, 773 F.3d 456, 457, 461-62 (2d Cir. 2014) ("The Swiss criminal investigation in the instant case is exactly the

type of proceeding that" Section 1782 "intended to reach."); In re Furstenberg Finance SAS, 785 F. App'x 882, 885 (2d Cir. Aug. 30, 2019) (summary order) (affirming determination that applicants were interested persons in light of affidavits indicating that they would be parties to foreign criminal proceeding and would "submit the relevant evidence directly" in that proceeding); accord In re Accent Delight Int'l Ltd., 869 F.3d 121, 129-30 (2d Cir. 2017).

B&C is the alleged victim of the fraud involving Schur that is being investigated in the Austrian and German criminal proceedings. See Rohregger Decl. ¶¶ 2, 11-20; Danckert Decl. ¶¶ 2, 9-27. In Germany, B&C filed a criminal complaint with the prosecutor's office. Danckert ¶ 2. And, B&C has the right to submit evidence to the prosecutors in both criminal proceedings. Rohregger Decl. ¶¶ 28, 30-31; Danckert Decl. ¶¶ 34, 36. B&C is thus an "interested person" within the meaning of the statute.

3. *The discovery requested by B&C is "for use" in a foreign proceeding.*

Finally, the requested discovery satisfies the "for use" requirement in Section 1782. See 28 U.S.C. § 1782(a). The term "for use" is afforded a "broad interpretation," and the "sought-after evidence need not be admissible or even discoverable under the rules of the foreign jurisdiction." Deposit Ins. Agency v. Leontiev, No. 17-MC-00414 (GBD) (SN), 2018 WL 3536083, at *3 (S.D.N.Y. July 23, 2018) (internal citations omitted). An applicant need only show that it has "the practical ability to inject the requested information into a foreign proceeding." In re Accent Delight Int'l Ltd., 869 F.3d at 131-32; see also In re Kingstown Partners Master Ltd., No. 21-MC-691 (LTS), 2022 WL 1081333, at *5 (S.D.N.Y. Apr. 8, 2022) (noting that "for use" requirement is "afforded a broad interpretation" and is satisfied if "materials sought are to be used at some stage of a foreign proceeding") (internal quotation marks omitted).

B&C submitted a declaration from its Austrian counsel, which describes the nature of the allegations in the Austrian criminal complaint, explains that the Austrian prosecutor is actively investigating those allegations, and declares, under penalty of perjury, that the requested discovery is relevant to the Austrian criminal investigation. See Rohregger Decl. ¶¶ 9-21, 27; see also Tr. at 40. Austrian counsel further states that B&C intends to submit the evidence obtained here to the prosecutor in the Austrian criminal investigation, and that Austrian law has "very few restrictions or requirements" concerning "how and from what source any evidence that is relevant for the case comes from." Rohregger Decl. ¶¶ 28-29. Counsel also states that if charges are brought in Austria, an Austrian court will be able to consider the evidence submitted by B&C. Id. ¶ 30.

Additionally, B&C submitted a declaration from its German counsel with respect to the pending German criminal proceeding. See Danckert Decl. In his declaration, German counsel indicated that the information sought by B&C is relevant to the German criminal investigation and B&C intends to submit the evidence obtained pursuant to the subpoenas to the German prosecutor. Id. ¶¶ 33-34. Further, counsel explains that under German law, the prosecutor conducting the investigation may accept such evidence and, if criminal charges are brought, a German court will be able to consider the evidence. Id. ¶¶ 35-37. Further, there is no dispute that the Austrian and German criminal investigations are a qualifying foreign proceeding for purposes of Section 1782. See Intel, 542 U.S. at 259 (noting that Congress intended for judicial assistance to be available "whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature") (emphasis and citation omitted).

Respondents nevertheless contend that the "for use" requirement is not met for three reasons. First, Respondents argue that B&C seeks discovery for use in a foreign arbitration,

which is not a qualifying foreign proceeding under Section 1782. See ECF No. 23 at 16-17. Respondents point to the timing of B&C's filing of the Section 1782 application to argue that the pending Austrian and German criminal investigations are "being used as a pretext to obtain discovery for use in a foreign proceeding for which [Section] 1782" discovery is not available—namely, the German arbitration which B&C commenced on August 12, 2022. See ECF No. 23 at 17-19; ECF No. 38 at 11-12; Tr. at 11. The Austrian and German criminal proceedings were commenced in March and April of 2022, respectively. ECF No. 23 at 17. On June 13, 2022, the Supreme Court issued its decision in ZF Automotive US Inc. v. Luxshare, Ltd., which held that an arbitration does not qualify as a "foreign or international tribunal" for purposes of obtaining discovery pursuant to Section 1782. See 142 S. Ct. 2078, 2085, 2089 (2022). B&C filed the instant application on July 14, 2022. See ECF No. 1. According to Respondents, that three-to-four-month delay, between the commencement of the criminal proceedings and the filing of the instant application, demonstrates that B&C seeks the discovery for use in the arbitration, particularly because B&C points to no intervening developments in the foreign criminal investigations. ECF No. 23 at 18.

ZF Automotive, however, did not change the law in the Second Circuit. Even before the Supreme Court's decision in ZF Automotive, a party in this Circuit could not use an arbitration as the underlying "foreign proceeding" for which discovery was requested in a Section 1782 application. See Nat'l Broad. Co. (NBC) v. Bear Stearns & Co., 165 F.3d 184, 185 (2d Cir. 1999) (holding that a commercial arbitration in Mexico is not a "proceeding in a foreign or international tribunal" under 28 U.S.C. § 1782). Regardless, the delay of no more than four months, between the commencement of the criminal investigations in Germany and Austria and the filing of the Section 1782 application, is not, by itself, sufficient to demonstrate that B&C is

using those investigations as a pretext for obtaining discovery for a foreign arbitration. In the case relied on by Respondents to support their argument that B&C's "delay" demonstrates pretext, the delay was significantly longer than the delay here. See ECF No. 23 at 17-18 (citing In re Application of Gov't of Lao People's Democratic Republic, No. 15-MC-00018, 2016 WL 1389764, at *8 (D.N. Mar. I. Apr. 7, 2016) (delay of "years")).[3] Further, there are many innocuous reasons that explain away such a short delay as occurred here, including that there may have been reasons specific to the Austrian and German criminal proceedings to not immediately seek Section 1782 assistance from this Court. See Tr. at 62-64.

Second, Respondents contend that B&C has "made no showing that the prosecutors" in the Austrian and German criminal proceedings "believe that Respondents have information relevant" to those proceedings. ECF No. 23 at 19-20; see also ECF No. 38 at 15. Respondents point to the lack of a letter from the prosecutor in the Austrian or German proceeding supporting B&C's application here. Tr. at 19-20. Respondents, however, acknowledge that they can cite to no case from this Circuit where a court has expressly required such a letter to support a finding that the discovery sought by the Section 1782 application is "for use" in a foreign proceeding. See Tr. at 24, 49-50.

Nor are Respondents correct that B&C cannot demonstrate that the requested discovery is for use in the pending criminal proceedings without such a letter from the foreign prosecutors.

---

[3] At oral argument, Respondents also cited to In re Harbour Victoria Investment Holdings Ltd., No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. June 29, 2015), to support their argument that a delay of mere months may indicate pretext. See Tr. at 67. But that case is distinguishable, as the court there determined that the Section 1782 application was brought only after another court had denied the requested discovery, demonstrating that the applicant was using Section 1782 to "circumvent a U.S. court's ruling." Harbour Victoria, 2015 WL 4040420, at *7. By contrast, here, even before ZF Automotive, B&C could not use the German arbitration as the predicate foreign proceeding for obtaining Section 1782 discovery.

See Tr. at 50. As courts in this Circuit have made clear, an applicant need make only a "*de minimis* showing that the information sought is 'for use'" in a reasonably contemplated criminal foreign proceeding. See, e.g., In re Application of Shervin Pishevar, 439 F. Supp. 3d 290, 302-03 (S.D.N.Y. 2020). That burden is satisfied here by the declarations submitted from B&C's German and Austrian counsel, both of whom detail the relevancy of the requested information to the foreign criminal proceedings. See ECF Nos. 5, 7.

Relatedly, Respondents contend that B&C has not shown an "evidentiary bridge" between Dees and Lindsay Goldberg, on the one hand, and the subject matter of the foreign criminal investigations, on the other. See Tr. at 17-18, 26, 54-55. B&C, however, was not required to show that Dees and Lindsay Goldberg were involved in the wrongdoing that is the subject of the foreign criminal investigations in order to obtain discovery pursuant to Section 1782. See Tr. at 40-41. All that is required is a showing that Dees and Lindsay Goldberg possess information that is relevant to the foreign proceeding. See, e.g, In re Arida, LLC, No 19-MC-522 (PKC), 2020 WL 7496355, at *6-7 (S.D.N.Y. Dec. 21, 2020) (examining whether information sought was "plainly irrelevant" to foreign proceeding in ruling on Section 1782 application). That showing has been made here, through the declarations of B&C's German and Austrian counsel, who have explained the relevancy of the requested information to the German and Austrian proceedings. Danckert Decl. at ¶¶ 33-34; Rohregger Decl. at ¶¶ 27-28. Further, as B&C points out, Dees was a managing director at Atlas, which is the company that co-owned Schur, and he was identified as a "knowledge bearer" in the SPA entered into by B&C for the purchase of Schur. Tr. at 42; see also Application at ¶ 13. Additionally, Lindsay Goldberg owned 20% of Lindsay Goldberg Europe—the investment fund that purchased Schur in 2016 and then sold it to B&C in 2021. Application at ¶¶ 10, 13-14, 16. In connection with the purchase and sale of Schur

by its investment fund, Lindsay Goldberg would presumably have performed due diligence on Schur and thus could have information relevant to the subject matter of the criminal proceedings.

Lastly, Respondents argue that the "sheer breadth" of the requested discovery demonstrates that it is not "for use" in the Austrian or German criminal proceedings.[4] See ECF No. 23 at 20-21. To further this argument, Respondents points to the document preservation notice sent by B&C to Respondents in April 2022 in connection with the German arbitration, contending that the documents Respondents were asked to preserve for the arbitration "are the exact same documents that" B&C seeks "with their Section 1782 subpoenas." Tr. at 13. As an initial matter, any "alleged overbreadth of the Subpoenas" is an objection that "speaks to the extent of the discovery that should be granted, not whether the statutory 'for use' requirement has been met." In re Kingstown Partners Master Ltd., 2022 WL 1081333 at *5 (citation omitted). Moreover, any overlap between the requested discovery and the documents identified in B&C's document preservation notice is readily explained by the fact that the foreign criminal investigations and the arbitration concern common underlying facts involving the same alleged wrongdoing—specifically, the "gross misstatement of financials," such as EBITDA, and the "misappropriation of company assets." See Tr. at 5, 44.

---

[4] To support this argument, Respondents rely on In re Postalis, 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018). See, e.g., Tr. at 21. But Postalis is readily distinguishable, because the applicant there had publicly declared that it was using the Section 1782 application "to obtain discovery for use in pleading a case against" the respondent in the United States. See 2018 WL 6725406, at *3-4. In concluding that the evidence sought was not "for use" in a foreign proceeding, the court examined the discovery requests and concluded that they were "overbroad" and not "targeted" towards the "conduct and knowledge" of the respondent in the Brazilian foreign proceeding. Id. at *4. Here, by contrast, Respondents do not point to similar public statements by B&C. And Respondents' reliance on the timing of B&C's application vis-à-vis the commencement of the foreign criminal investigations is not, for the reasons discussed, sufficient to show that B&C is using this Section 1782 application to obtain discovery for the German arbitration. Moreover, the discovery requests are targeted to obtaining information relevant to the conduct under investigation in the foreign criminal proceedings.

In short, Respondents are located in the Southern District of New York, the requested discovery is "for use" in pending criminal proceedings in Austria and Germany, and B&C is an interested party within the meaning of the statute. Consequently, B&C has satisfied the statutory requirements under Section 1782.

B.  B&C's application also satisfies the Section 1782 discretionary factors.

Once the statutory requirements are met, a district court has discretion to determine whether, and to what extent, to honor a request for assistance under Section 1782. See Intel, 542 U.S. at 264. If the court permits discovery under Section 1782, it "may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country," for taking testimony or producing documents. 28 U.S.C § 1782(a). A court acts within its discretion so long as the district court fashions its order in accordance with the "twin aims" of Section 1782—"providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." In re Application of Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir. 1992); see also In re Application of Gianoli Aldunate, 3 F.3d 54, 61-62 (2d Cir. 1993); In re Application of Asher B. Edelman, 295 F.3d 171, 181 (2d Cir. 2002) ("Congress planned for district courts to exercise broad discretion over the issuance of discovery orders pursuant to § 1782(a)—both over whether to grant a discovery order and, if so, what limits to place on that discovery.").

1.  *Participation in the foreign proceeding*

The first Intel factor provides that "when the person from whom discovery is sought is a participant . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." Intel, 542 U.S. at 264.

This factor favors B&C because Respondents are not participants in the foreign criminal proceedings, see ECF No. 4 at 7-8, and thus may not be within the jurisdictional reach of the Austrian or German courts. Respondents do not raise any argument in connection with this first factor. See ECF No. 23 at 21-29. The first factor thus weighs in favor of granting B&C's application for Section 1782 discovery.

       2. *The nature of the foreign tribunal and character of the proceedings underway*

The second Intel factor provides that a district court ruling on a Section 1782 application may consider "the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264. "Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." Euromepa, S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." Id. at 1100.

B&C posits that Austrian and German courts are receptive to Section 1782 assistance. See ECF No. 4 at 8-9. More specifically, B&C submitted a declaration from Dr. Michael Rohregger, an attorney qualified to practice in Austria courts, who explained that under Austrian law, there "are very few restrictions or requirements on how or from what source any evidence that is relevant for the case comes from." Rohregger Decl. ¶¶ 1, 29. Rohregger further added that the information sought by the proposed subpoenas is "relevant to the Austrian criminal investigation" and an Austrian court "will be able to consider the evidence provided by [B&C], including evidence obtained in response to the proposed subpoenas." Id. ¶¶ 27, 30-31. B&C also

submitted a declaration from Dr. Jakob Danckert, an attorney qualified to practice before the courts in Germany, who similarly explained that the information sought by the subpoenas is relevant to the German criminal investigation and a German court will be able to consider such evidence. Danckert Decl. ¶¶ 1, 33-37.

  B&C has thus made a showing that a foreign court will be receptive to the evidence it seeks through the instant application. By contrast, Respondents have not provided any authoritative proof that the Austrian or German courts would reject the evidence obtained by B&C through its Section 1782 application. See In re Gorsoan Ltd., No. 13-MC-397, 2014 WL 7232262, at *7 (S.D.N.Y. Dec. 10, 2014) (noting that "the party opposing the Section 1782 application bears the burden of proving the non-receptivity of the foreign tribunal"). Instead, Respondents counter that "even if such evidence is 'usable,' there still is no evidence that any prosecutor, in any country, has expressed any need for a U.S. tribunal to gather evidence on its behalf." ECF No. 23 at 18. Respondents rehash their argument, made in connection with the statutory requirements, that B&C was required to submit some evidence indicating that the prosecutors in either country want the information sought. See Tr. at 23-24; see also ECF No. 38 at 1 (arguing that "the European prosecutors have themselves expressed zero interest in obtaining discovery from Respondents"). But, as already discussed, Respondents point to no case mandating such a requirement. See Tr. at 50. And, to the extent Respondents may be suggesting that B&C was required to wait for Austrian or German authorities to submit their own Section 1782 application or to resort in the first instance to the process available under the Mutual Legal Assistance Treaty, see ECF No. 23 at 23, the Second Circuit has made clear that there is no requirement that an applicant exhaust other avenues for obtaining the requested discovery before filing a Section 1782 application. Mees v. Buiter, 793 F.3d 291, 303 (2d Cir. 2015); Federal

Republic of Nigeria, 27 F.4th at 148, 155. In short, this factor also weighs in favor of granting B&C's application.

   3. *Attempt to circumvent foreign proof-gathering restrictions and policies*

  The third Intel factor seeks to identify "attempt[s] to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 264-65. Section 1782, however, does not limit a district court's authority to require the production of documents "to materials that could be discovered in the foreign jurisdiction if the materials were located there." In re Hansainvest Hanseatische Inv.-GmbH, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018). "Thus, to demonstrate circumvention, Respondents must illustrate not merely that the requested documents are not obtainable through" procedures in Austrian or German courts, but that B&C is "engaged in a bad faith endeavor to misuse Section 1782." Id.

  B&C argues that there are no proof-gathering restrictions that would prevent this Court from granting the application. See ECF No. 4 at 9-10. As they did in attacking the "for use" requirement, Respondents contend that this application is an attempt by B&C to circumvent ZF Automotive and the proof-gathering restrictions imposed in the German arbitration. ECF No. 23 at 24-25. For the reasons already discussed, there is no support in the record for Respondents' claim that B&C is attempting to circumvent the proof-gathering restrictions in the German arbitration. In any case, "provided the statutory and discretionary criteria are satisfied, as they are here, a Section 1782 application should not be denied merely because the discovery material may have potential other uses by the [applicant]." In re Al-Attabi, No. 21-MC-207 (VSB) (RWL), 2022 WL 229784, at *9 (S.D.N.Y. Jan. 26, 2022); accord In re Accent Delight Int'l, 869 F.3d at 134-35.

  This factor therefore also weighs in favor of granting B&C's application.

4. *Unduly burdensome request*

The final Intel factor directs courts to be mindful of overly intrusive or burdensome discovery requests. Intel, 542 U.S. at 264-65. "[A] district court evaluating a [Section] 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure." Mees, 793 F.3d at 302. As the Second Circuit has explained, if a court has "misgivings . . . about the impact of its participation in the foreign litigation," it is preferable for the court to issue "a closely tailored discovery order rather than . . . simply denying relief outright." Euromepa, 51 F.3d at 1101.

Respondents contend that the subpoenas are unduly burdensome, arguing that the scope of the requests are "grossly excessive," in part because the requests are phrased as seeking "all [d]ocuments and [c]ommunications" concerning or referring to a given topic. ECF No. 23 at 26-27. Although the requests in the subpoenas are numerous, each request is targeted at a topic relevant to the criminal investigations. The criminal investigations concern the gross misstatement of EBITDA and the misappropriation of company assets, and the various requests in the subpoenas appear aimed at obtaining information relevant to those two subject areas. See Tr. at 44-45; Rosenbaum Decl., Exs. A, C; see also Danckert Decl. ¶¶ 12-27, 33; Rohregger Decl. ¶¶ 11-20, 27. Further the time frame for the requested information is limited to January 1, 2016, through the present. Lindsay Goldberg acquired Schur on July 25, 2016, and the financial condition of the company at around the time of the acquisition and following that acquisition is plainly relevant to the allegations at the heart of the criminal investigations.

In sum, B&C has satisfied the statutory factors under Section 1782 and all of the Intel factors weigh in favor of granting B&C's application for discovery. If Respondents seek to

narrow the scope and number of the requested documents, they may do so through a meet-and-confer with B&C's counsel.

## CONCLUSION

For the reasons set forth above, B&C's application pursuant to Section 1782 is granted. B&C is hereby authorized to serve the subpoenas annexed as Exhibits A-D to the Rosenbaum Declaration. See ECF Nos. 8-1, 8-2, 8-3, 8-4. The Clerk of Court is directed to terminate the motions at ECF Nos. 1 and 10.

**SO ORDERED.**

DATED:  New York, New York
        February 6, 2023

_____
VALERIE FIGUEREDO
United States Magistrate Judge