**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X
In re: the ex parte application of
B&C KB HOLDING GMBH,

          Applicant,    **22-mc-00180 (LAK) (VF)**

For an order pursuant to 28 U.S.C. § 1782    **OPINION & ORDER**
permitting Applicant to issue subpoenas in aid
of foreign proceedings to:

GOLDBERG LINDSAY & CO. LLC d/b/a
LINDSAY GOLDBERG, LLC, and MICHAEL
DEES,

          Respondents.
------------------------------------------------------------------X
**VALERIE FIGUEREDO, United States Magistrate Judge:**

    By letter motion dated January 17, 2025, Applicant B&C KB Holding GmbH ("B&C") challenges the withholding of certain documents based on attorney-client privilege by Respondents Goldberg Lindsay & Co. ("Lindsay Goldberg") and Michael Dees ("Dees"). ECF No. 153. According to B&C, in this proceeding under 28 U.S.C. § 1782 ("Section 1782"), U.S. privilege law does not apply, but even if it did, the attorney-client privilege does not shield from disclosure many of the documents that Respondents have withheld as privileged. Respondents oppose the motion. ECF No. 155. For the reasons explained below, Respondents have properly withheld most of the documents at issue on privilege grounds, except for 28 documents for which Respondents waived the attorney-client privilege through disclosure of the communication to a third party.

## BACKGROUND[1]

B&C filed an application under Section 1782, seeking discovery from Respondents concerning Schur Flexibles Group ("Schur"). ECF No. 1. Lindsay Goldberg, a private-equity firm with its principal place of business in New York, purchased Schur, a manufacturing company based in Austria, through an investment fund, and Lindsay Goldberg's investment was held through a Dutch entity, Atlas Flexibles Cooperatief U.A. ("AF Coop"). See id. at ¶¶ 8, 10, 24; ECF No. 6 at ¶¶ 5-7; ECF No. 7 at ¶¶ 2, 24. AF Coop owned approximately 85% of a German entity, Atlas Flexibles GmbH. ECF No. 153-3 at 74-75.[2] Lindsay Goldberg's German affiliate, Lindsay Goldberg Europe GmbH, acquired the remaining approximately 15% of Atlas Flexibles GmbH. Id. Atlas Flexibles GmbH is the parent company of Schur Flexibles GmbH. ECF No. 153-2 at 23-25. Until 2020, Lindsay Goldberg held a 20% ownership interest in Lindsay Goldberg Europe GmBH. ECF No. 153-4 at 9.

In 2019, Lindsay Goldberg attempted to sell Schur. ECF No. 153-3 at 27. Goldman Sachs served as Lindsay Goldberg's financial advisor for the potential sale, and the project was named "Project Sky." Id. at 29. Project Sky was unsuccessful. ECF No. 153-4 at 121. In 2021, Lindsay Goldberg resumed its efforts to sell Schur. Id. at 122-26. On September 30, 2021, B&C, pursuant to a share-purchase agreement, acquired an 80% ownership stake in Schur, in a transaction named "Project Stelvio." ECF No. 1 at ¶ 8; ECF No. 153-4 at 122. The share-purchase agreement is governed by German law. ECF No. 21-2 at 45.

---

[1] The Court has recounted the factual background of this case in a prior decision, familiarity with which is presumed. See ECF No. 44.

[2] The page numbers referenced herein for citations to the electronic docket ("ECF") are to the electronically generated page numbers in those documents.

On July 14, 2022, B&C filed the instant application, seeking discovery from Respondents concerning Schur for use in criminal investigations pending in Austria and Germany. See ECF No. 1. More specifically, B&C sought authorization to issue subpoenas to Lindsay Goldberg and Dees, a Managing Partner at Lindsay Goldberg. Id. at 1-2. The subpoenas sought documentary evidence as well as the depositions of Dees and a corporate representative of Lindsay Goldberg. See ECF Nos. 8-1, 8-2, 8-3, 8-4. On February 6, 2023, the Court granted B&C's application. ECF No. 44.

The instant dispute stems from Respondents' document production pursuant to those subpoenas. Following the substantial completion of their document production, on December 16, 2024, Respondents provided B&C with a privilege log. See ECF No. 153 at 1; ECF No. 153-7. The log indicated that Respondents had withheld various categories of documents on the basis of, as is relevant here, the attorney-client privilege. ECF No. 153-7 at 2-6. B&C challenges those designations, arguing that German, rather than U.S. law, should govern the privilege designations, and further arguing that German law does not recognize claims of attorney-client privilege. ECF No. 153. In the alternative, B&C argues that even if U.S. privilege law applies, certain withheld documents were shared with non-attorneys, thus waiving any assertion of privilege. Id. at 6-7.

On February 24, 2025, the Court held a telephone conference to address the instant dispute. ECF Nos. 156-57. On March 10, 2025, Respondents submitted to the Court a representative sample of the at-issue documents for *in camera* review. Respondents also submitted to the Court for *in camera* review all of the documents which were withheld from Respondents' production to B&C on privilege grounds in Categories 1, 2, 3, and 5, but which included non-attorney third parties in the communications.

## **LEGAL STANDARD**

Under Federal Rule of Evidence 501, claims of privilege in a federal-question case are "govern[ed]" by the principles of "common law . . . as interpreted by United States courts in the light of reason and experience." Fed. R. Evid. 501; see also Astra Aktiebolag v. Andrx Pharmaceuticals, Inc., 208 F.R.D. 92, 97 (S.D.N.Y. 2002). "The 'common law' as applied under Rule 501 includes 'choice of law' questions." Id. (citing Golden Trade S.r.L. v. Lee Apparel Co., 143 F.R.D. 514, 519 (S.D.N.Y. 1992)). As the Second Circuit has explained, the so-called "touch base" test is used to determine "which privileges are 'legally applicable' in the [Section] 1782 context." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 99 (2d Cir. 2020). Under that test, a court applies "the law of the country that has the 'predominant' or 'the most direct and compelling interest' in whether . . . communications should remain confidential, unless that foreign law is contrary to the public policy of this forum.'" Id. (quoting Astra, 208 F.R.D. at 98). "The country with the predominant interest is either 'the place where the allegedly privileged relationship was entered into,' or 'the place in which that relationship was centered at the time the communication was sent.'" Id. (quoting Astra, 208 F.R.D. at 98).

For example, "communications relating to legal proceedings in the United States, or that reflect the provision of advice regarding American law, 'touch base' with the United States and, therefore, are governed by American law, even though the communication[s] may involve foreign attorneys or a foreign proceeding." Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 65 (S.D.N.Y. 2010). Conversely, communications regarding a foreign legal proceeding or foreign law "touch base" with the foreign country. See, e.g., Astra, 208 F.R.D. at 98-99 (concluding that the law of several foreign countries applied to documents where the "alleged privileged communications took place in a foreign country or involved foreign attorneys or proceedings");

4

Kiobel v. Royal Dutch Petroleum Co., No. 02-CV-7618 (KMW) (HBP), 2005 WL 1925656, at *3 (S.D.N.Y. Aug. 11, 2005) (applying British law to documents relating to prospective litigation in England); Tulip Computs. Int'l B.V. v. Dell Comput. Corp., No. 00-CV-981 (MPT), 2002 WL 31556497, at *3 (D. Del. Nov. 18, 2002) (applying Dutch law to documents containing legal advice regarding Dutch law and Dutch patents); VLT Corp. v. Unitrode Corp., 194 F.R.D. 8, 17-19 (D. Mass. 2000) (applying Japanese law to letter concerning Japanese law; British law to letter pertaining to British patent); Stryker Corp. v. Intermedics Orthopedics, Inc., 145 F.R.D. 298, 306-07 (E.D.N.Y. 1992) (applying British law to communications between British patent agent and American attorney regarding European patent application). Foreign law, however, does not apply—even when the foreign country has the predominant interest—where its application would "violate principles of comity" or offend "the public policy of this forum." Wultz v. Bank of China Ltd., 979 F. Supp. 2d 479, 490 (S.D.N.Y. 2013), on reconsideration in part, No. 11-CV-1266 (SAS), 2013 WL 6098484 (S.D.N.Y. Nov. 20, 2013) (internal quotation marks and citations omitted).

## DISCUSSION

The parties dispute whether German or U.S. law should apply to attorney-client privilege designations for the following categories of documents identified in Respondents' privilege log: Categories 1, 2, 3, 5, and 6. See ECF No. 153 at 3. B&C contends that because these categories of documents include the solicitation and provision of legal advice on issues of German law, German privilege law applies to the documents under the Second Circuit's "touch base" test. ECF No. 153 at 3-5. Additionally, B&C argues that even if U.S. privilege law were to apply, several documents were shared with non-attorney third parties and are thus not protected from disclosure by the attorney-client privilege. ECF No. 153 at 6-7. In response, Respondents argue

5

that U.S. privilege law applies because the documents at issue in these categories were in the possession of Respondents, a U.S. entity and a U.S. citizen. ECF No. 155 at 4. Respondents further argue that even if Germany has the predominant interest under the touch base test, U.S. privilege law should still apply, because German law does not allow for meaningful pre-trial discovery and does not have a developed body of law governing the attorney-client privilege, and therefore application of German law would "offend the . . . principles of comity that choice-of-law rules were intended to protect." Id. at 2-3 (internal quotation marks and citations omitted).

As discussed below, a review of the documents in the disputed categories demonstrates that Germany has the predominant interest in the confidential treatment of the documents. Under the touch base test, German law should apply. However, application of German law would violate the principles of comity, and thus U.S. law should ultimately govern the issue of whether the documents are protected by the attorney-client privilege. Nevertheless, for several of the withheld documents, Respondents waived application of the attorney-client privilege, because the communications included non-attorney third parties or the documents were shared with non-attorney third parties.

## I. The "Touch Base" Test

### A. Germany has the predominant interest in the documents.

The documents in Categories 1, 2, 3, 5, and 6 include e-mails, Adobe PDFs, Microsoft Word documents, and Microsoft Excel spreadsheets authored or received by the following lawyers, all of whom were representing Lindsay Goldberg: Lindsay Goldberg's in-house counsel; counsel from Gleiss Lutz, a German-based law firm; counsel from Stibbe, a Netherlands-based law firm; counsel from the German and Belgium offices of Freshfields;

6

counsel from the New York office of Cravath, Swain & Moore LLP ("Cravath"); and counsel from the New York office of Weil, Gotshal & Manges LLP ("Weil"). ECF No. 153-7 at 2-6.

With regards to Categories 1, 5, and 6, Lindsay Goldberg's 2016 acquisition of Schur and the Project Stelvio transaction were both governed by German law. ECF No. 153 at 2-4; ECF No. 21-2 at 45 (share-purchase agreement). The documents in Category 1 include communications requesting, reflecting, or providing legal advice concerning the 2016 acquisition of Schur, and the documents largely concern advice from attorneys at a German-based law firm. ECF No. 153-7 at 2; see, e.g., LG-IRC-00000117; LG-IRC-00000146. Only two of the documents reviewed *in camera* include U.S. lawyers as participants in the e-mail communications, and those two documents are in Category 1.[3] In those communications, a single attorney at the New York office of Cravath was corresponding with Lindsay Goldberg's German counsel at Gleiss Lutz regarding the structure of the fund through which Lindsay Goldberg held Schur. See, e.g., LG-ICR-00000169. But even those two documents do not "reflect the provision of advice regarding American law." Gucci Am., Inc., 271 F.R.D. at 65.

Additionally, the documents in Category 5 that were submitted for *in camera* review all concern communications about Project Stelvio, and the attorneys included on the communications are from the German and Brussels offices of Freshfields.[4] ECF No. 153-7 at 6; see, e.g., LG-ICR-00000674; LG-ICR-00000680; LG-ICR-00000684. And the documents in category 6 concern communications with German-based attorneys about the notices and distributions after Project Stelvio was consummated. ECF No. 153-7 at 7. The touch base test

---

[3] One additional document submitted for *in camera* review referenced U.S. attorneys associated with Weil, but only Lindsay Goldberg employees received the e-mail communication and attachments.

[4] Only one document submitted for *in camera* review from Category 5 referenced both German and U.S. law. See LG-ICR-00000481.

7

counsels in favor of applying German law to the documents in these categories because Project Stelvio and the acquisition of Schur were transactions governed by German law and the attorneys involved were all providing advice on German law. See In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia, 347 F.R.D. 1, 9-10 (S.D.N.Y. 2024) (determining that English law applied where legal advice concerned English law); VLT Corp., 194 F.R.D. at 17-18 (applying Japanese law to letter from U.S. attorney to a Japanese patent agent seeking advice on Japanese law).

With regards to the documents in Category 2, the shareholder resolution was in a dual-language format (German and English), but only the German-language version was binding, and the German commercial code was cited in the resolution. ECF No. 153-8 at 3. The documents in this category submitted for *in camera* review all concern communications with German-based attorneys concerning the shareholder resolution, which was governed by the German commercial code. ECF No. 153-7 at 3; ECF No. 153-8 at 3; ECF No. 153-9 at 4. As such, under the touch base test, Germany has the predominant interest in whether the communications should remain confidential. In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia, 347 F.R.D. at 9-10 (applying English law under the touch base test because the communications at issue concerned advice on share purchase agreements governed by English law).

Finally, the documents in Category 3 are communications with counsel about Project Sky, which concerned Lindsay Goldberg's futile attempt to sell Schur in 2019. ECF No. 1 at ¶ 20. Project Sky concerned German law—specifically, Sections 291 of the German Stock Corporation Act, and comparable Austrian law. See LG-ICR-00000306; see also LG-ICR-00000354 (referencing German law in draft share-purchase agreement). Aside from Lindsay Goldberg's in-house counsel, only German lawyers authored the documents in Category 3 that

8

were submitted for *in camera* review. ECF No. 153-7 at 3-4; see LG-ICR-00000306; LG-ICR-00000351; LG-ICR-00000353; LG-ICR-00000354. This category, too, concerns documents primarily addressing German law and thus German privilege law should apply under the touch base test.

In short, the touch base test demonstrates that Germany has the predominant interest in the documents in Categories 1, 2, 3, 5, and 6, because the documents predominantly concern the application of German law.

All of Respondents' arguments to the contrary are unavailing. Respondents argue that under the touch base test, the United States has the most compelling interest in maintaining the confidentiality of the documents because the documents were produced "by U.S. parties in a U.S. action initiated in U.S. federal court pursuant to a U.S. statute," and accordingly, the documents have "a 'more than incidental' connection to the United States." ECF No. 155 at 4 (quoting Gucci America, Inc., 271 F.R.D. at 65). But contrary to Respondents' argument, courts in this Circuit have found that the touch base test has implicated another country's privilege laws, even where the documents subject to production were in a U.S. party's possession and were sought through a Section 1782 proceeding, like this one, in a U.S. court.[5] See, e.g., In re BM Brazil 1 Fundo de Investimento em Participações Multistratégia, 347 F.R.D. at 10 (applying English privilege law in a Section 1782 proceeding); see also In re Genial Institucional Corretora de Cambio, Titulos e Valores Mobiliarios S.A., No. 24-MC-348 (JMF), 2025 WL 40783, at *6 (S.D.N.Y. Jan. 7, 2025) (explaining that it "seem[ed] likely" that Brazilian law would apply in

---

[5] As an aside, if the production of documents by U.S. parties in an action brought in a U.S. court always required the application of U.S. privilege law (as Respondents appear to suggest) then all Section 1782 applications (which necessarily involve U.S. parties producing documents pursuant to a U.S. statute in an action commenced in a U.S. court) would necessarily be governed by U.S. privilege law, which is not the case.

the Section 1782 proceeding, but determining that "neither party ha[d] made arguments specific enough to allow the [c]ourt to resolve whether Brazilian privilege law applie[d]").

Further, the cases on which Respondents rely are inapposite. In Gucci America, Inc., for example, the court concluded that U.S. law should apply because the communications concerned trademarks registered in the United States. 271 F.R.D. at 67. In In re financialright GmbH, the court concluded that U.S. law applied because the U.S. attorneys were retained to represent the client "vis-à-vis American authorities." Id., No. 17-MC-105 (DAB), 2017 WL 2879696, at *4 (S.D.N.Y. June 22, 2017). Here, the communications largely involve Lindsay Goldberg's in-house counsel in New York communicating with outside counsel in Germany, who was evidently retained to advise on the application of German law to various transactions governed by German law.

Respondents also rely on Mangouras (ECF No. 155 at 2-4), which is equally unavailing. 980 F.3d at 99. In Mangouras, the Court explained that district courts should determine the country with the predominant interest based on "where the allegedly privileged relationship was entered into" or "the place in which the relationship was centered at the time the communication was sent." Id. at 99 (internal quotation marks omitted) (quoting Astra, 208 F.R.D. at 98). The court provided the following examples of situations in which domestic privilege law would apply under the touch base test: where the communications "relat[ed] to legal proceedings in the United States, or . . . reflect[ed] the provision of advice regarding American law," id. (internal quotation marks omitted) (quoting Gucci Am., Inc., 271 F.R.D. at 65), and where the documents sought "were located in New York, were created and produced in the context of a case pending in New York, and [were] being sought from United States lawyers in a court in New York pursuant to a United States statute," id. (internal quotation marks omitted) (quoting In re

10

Berlamont, No. 14-MC-00190 (JSR), 2014 WL 3893953 (S.D.N.Y. Aug. 4, 2014)). The documents at issue here were created to facilitate Lindsay Goldberg's acquisition and management of Schur, a German company; none of the communications concerned the provision of advice about U.S. law; and none of the documents related to a proceeding in a U.S. court. In short, even under the guidance in Mangouras, the documents "touch base" with Germany, rather than the United States. 980 F.3d at 99-100.

    B.  Application of German law would violate principles of comity.

Although the documents at issue predominantly involve foreign attorneys providing legal advice about transactions governed by German law, application of German law would offend principles of comity.

German law does not afford litigants pre-trial discovery. See ECF No. 153-10 at 6 (noting that "it must be emphasi[z]ed . . . that there is no such thing as . . . pre-trial discovery under German law"); see also financialright GmbH v. Robert Bosch LLC, 294 F. Supp. 3d 721, 734 (E.D. Mich. 2018) ("German Civil Procedure does not allow general pretrial discovery.") (internal quotation marks and citations omitted). Additionally, German law does not recognize the attorney-client privilege in civil proceedings. ECF No. 153-10 at 4. But despite the lack of protection for attorney-client communications under German law, the documents at issue here would not be subject to disclosure in a German court because there is no pre-trial discovery in Germany in civil proceedings. Consequently, if the Court were to apply German law, it would result in the wholesale production of documents that would be protected under U.S. law by the attorney-client privilege and would not be discoverable under German law in a civil proceeding. Under such circumstances, application of German law would violate the principles of comity that motivate the "touch base" test. See Astra, 208 F.R.D. at 100-02 (applying German privilege law

11

in a patent case because German law "promises confidentiality to communications between a patent agent and his clients," and thus, application of German law would not offend the principles of comity because the documents would not have been exchanged in a German proceeding).

In Astra, for example, application of the touch base test indicated that Korea had the predominant interest in application of its law to documents concerning legal proceedings in Korea. Id. at 99, 102. Korean law, like German law, does not recognize the attorney-client privilege and does not provide for pre-trial discovery. Id. at 101-02. The court thus concluded that requiring the production of the documents, because Korean law did not provide for withholding pursuant to the attorney-client privilege, would "violate principles of comity and would offend the public policy of this forum" because the documents would not otherwise be disclosed through pretrial discovery. Id. at 102.

Soo, too, here. Application of German privilege law and requiring disclosure of the subject documents without regard for the fact that the documents would likely not be discoverable in a German proceeding, would violate principles of comity. See Astra, 208 F.R.D. at 101-02 (applying the privilege law of this Circuit even though Korean law should have applied under the touch base test because "none of the documents . . . would be discoverable in a Korean civil suit" notwithstanding the lack of privilege recognized under Korean law); see also Gucci Am., 271 F.R.D. at 69-70 (explaining that even if Italian law applied under the touch base test, "application of Italian law would violate the public policy of this forum" because it was not clear that the documents "would be discoverable in an Italian litigation"). Accordingly, application of U.S. privilege law is appropriate and the documents in Categories 1, 2, 3, 5, and 6 are protected from disclosure under the attorney-client privilege.

## II.     Waiver of the Attorney-Client Privilege

Because U.S. law applies to the documents identified in Respondents' privilege log, the Court must determine whether Respondents waived the attorney-client privilege with regards to the communications that were shared with non-attorney third parties. As discussed below, Respondents have waived privilege with regards to 28 documents in Categories 1, 2, 3, and 5, because the documents were shared with non-attorney third parties.

The non-attorneys who appear on the documents in Category 1, which preceded Lindsay Goldberg's acquisition of Schur, are: Respondents' "transaction advisor" at CW Downer, an investment bank, and an individual at Intertrust Group, a trust management services provider. ECF No. 153-7 at 2. In Category 2, which concerned shareholder resolutions regarding Schur's corporate actions and financing, the following non-attorneys were included on e-mail communications with counsel: financial-services advisors at PES Trust, which is a financial services provider; and an individual at Intertrust Group. Id. at 2-3. In Category 3, which concerned Project Sky, the following non-attorneys were included on e-mail communications with counsel: financial advisors from Goldman Sachs; individuals from PwC, an accounting firm; and individuals from Schur. Id. at 4. In Category 5, which concerned Project Stelvio, only a financial advisor from Goldman Sachs was included on e-mail communications with counsel. Id. at 6. There are no non-attorney third parties in the communications from Category 6. Id. at 7.

Ordinarily, "[t]he presence of a third party during communication or disclosure of otherwise confidential attorney-client communications to a third party waives" any claim of attorney-client privilege. Guiffre v. Maxwell, No. 15-CV-7433 (RWS), 2016 WL 1756918, at *5 (S.D.N.Y. May 2, 2016). However "communications which reflect advice given by counsel to a corporation do not lose their privileged status when shared among corporate employees who

13

share responsibility for the subject matter of the communication." Baptiste v. Cushman & Wakefield, Inc., No. 03-CV-2102 (RCC) (THK), 2004 WL 330235, at *2 (S.D.N.Y. Feb. 20, 2004). "Similarly, an agent, such as a financial advisor, may have communications with an attorney that 'are covered by the attorney-client privilege if the financial advisor's role is limited to helping a lawyer give effective advice by explaining financial concepts to the lawyer.'" Urb. Box Off. Network, Inc. v. Interfase Managers, L.P., No. 01-CV-8854 (LTS) (THK), 2006 WL 1004472, at *3 (S.D.N.Y. Apr. 18, 2006) (quoting Export-Import Bank of the United States v. Asia Pulp & Paper Co., Ltd., 232 F.R.D. 103, 113 (S.D.N.Y.2005)); see also United States v. Ackert, 169 F.3d 136, 139 (2d Cir. 1999) ("[T]he inclusion of a third party in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client."); United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir. 1995) ("Under certain circumstances, . . . the privilege for communication[s] with attorneys can extend to shield communications to others when the purpose of the communication is to assist the attorney in rendering advice to the client.").

In the Second Circuit, a financial advisor's inclusion in otherwise confidential communications does not amount to waiver only if the financial advisor is "translat[ing] or interpret[ing] information," Ackert, 169 F.3d at 139, akin to an interpreter translating a foreign language. United States v. Kovel, 296 F.2d 918, 920-23 (2d Cir. 1961). In United States v. Kovel, the Second Circuit held that the attorney-client privilege applied to communications with a third party—an accountant employed by the client's attorney—where "the presence of the accountant is necessary, or at least highly useful, for the effective consultation between the client and the lawyer." 296 F.2d at 922. In Kovel, the Court recognized that the inclusion of a third

14

party "in attorney-client communications does not destroy the privilege if the purpose of the third party's participation is to improve the comprehension of the communications between attorney and client." Ackert, 169 F.3d at 139. The privilege does not extend, however, to a communication between an attorney and a third party "solely because the communication proves important to the attorney's ability to represent the client." Id. at 139 (rejecting application of attorney-client privilege to communications between investment banker and attorney even where "those conversations significantly assisted the attorney in giving his client legal advice about its tax situation"). Nor does Kovel apply where the communication between the attorney and third party "merely provides additional 'information the client did not have' for the lawyer to 'advise his client . . . about the legal and financial implications' of an action." Sampedro v. Silver Point Cap., L.P., 818 F. App'x 14, 19 (2d Cir. 2020) (summary order) (quoting Ackert, 169 F.3d at 138-40) (cleaned up). So long as the third party serves "a specialized purpose akin to an accountant who deciphers financial information so that the lawyer can effectively counsel the client," the communications between the attorney and third party are protected by the attorney-client privilege. Sampedro, 818 F. App'x at 19.

The Court reviewed the 16 documents from Categories 1, 2, and 5 which contain non-attorney third parties.[6] As to those documents, the presence of individuals from Goldman Sachs, CW Downer, Intertrust Group, PES Trust, and PwC on the communications amount to a waiver of privilege. A review of these documents indicates that, in some of the documents, attorneys are seeking input from, for example, a financial advisor at Goldman Sachs, on the terms of a share-

---

[6] The documents reviewed from Categories 1, 2, and 5 that contain non-attorney third parties are: LG-ICR-00000718; LG-ICR-00000838; LG-ICR-00000847; LG-ICR-00000883; LG-ICR-00000894; LG-ICR-00000896; LG-ICR-00000898; LG-ICR-00000900; LG-ICR-00000911; LG-ICR-00001063; LG-ICR-00001451; LG-ICR-00001711; LG-ICR-00001714; LG-ICR-00001717; LG-ICR-00001721; LG-ICR-00001724.

purchase agreement. See, e.g., LG-ICR-00001711. The role of the third party therefore does not appear to be "for the purpose of the client obtaining legal advice from its counsel," but rather to advise on a financial transaction. Urb. Box Off. Network, Inc., 2006 WL 1004472, at *4. In other documents, lawyers for Lindsay Goldberg indicate that they merely "discussed" certain issues with the financial professionals. See, e.g., LG-ICR-00000838. From a review of the documents, it is not clear that the third parties were "translat[ing] or interpret[ing] information" for purposes of assisting the lawyer in his communications with his client, as would be necessary to extend the attorney-client privilege to communications with third parties. Ackert, 169 F.3d at 139-40 ("Because [the investment banker's] role was not as a translator or interpreter of client communications, the principle of Kovel does not shield his discussions with [counsel]."); see also Winfield v. City of New York, No. 15-CV-05236 (LTS) (KHP), 2018 WL 2148435, at *3 (S.D.N.Y. May 10, 2018) (stating that "the burden is on the party asserting privilege to demonstrate privilege") (citing Von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 146 (2d Cir. 1987)). Respondents are thus hereby directed to produce to B&C the 16 documents in Categories 1, 2, and 5.

With regards to the documents in Category 3, Respondents submitted 12 e-mail communications that include individuals from Schur.[7] These communications concern Project Sky, the unsuccessful attempt by Lindsey Goldberg to sell Schur. ECF No. 1 at ¶ 20. At the time of the at-issue communications in Category 3, Lindsay Goldberg owned Schur through an investment fund held through AF Coop, a separate entity where Dees also served as a director. See id. at ¶¶ 13, 20, 24. While courts have sometimes extended the attorney-client privilege to

---

[7] The documents reviewed from Category 3 that contain participants from Schur are: LG-ICR-00000857; LG-ICR-00000868; LG-ICR-00000879; LG-ICR-00000880; LG-ICR-00000882; LG-ICR-00001062; LG-ICR-00001065; LG-ICR-00001066; LG-ICR-00001067; LG-ICR-00001453; LG-ICR-00001455; LG-ICR-00001663.

protect "communications between a parent corporation and its attorneys which are also communicated to a subsidiary," Weber v. FujiFilm Med. Sys. U.S.A., Inc., No. 3:10-CV-401 (JBA), 2011 WL 677282, at *2 (D. Conn. Jan. 24, 2011) (internal quotation marks and citations omitted), the relationship between Lindsay Goldberg and Schur was not a parent-subsidiary relationship in 2019, as Lindsay Goldberg's investment in Schur was held through AF Coop, a Dutch entity. Nothing in the record suggests that AF Coop was a subsidiary of Lindsay Goldberg. See, e.g., ECF No. 1. Consequently, to assert attorney-client privilege over the otherwise confidential information shared with Schur, Lindsay Goldberg would need to invoke the common-interest doctrine, which it has not done here. See ECF No. 155 at 4-5. And, in any case, the only common interest evident from the documents submitted for *in camera* review is purely commercial—namely, the prospective sale of Schur. See Kelly v. Handy & Hartman, No. 08-CV-0163 (KMK) (GAY), 2009 WL 2222712, at *2 (S.D.N.Y. July 23, 2009) (explaining that to invoke the common-interest doctrine the party claiming privilege must demonstrate that the parties communicating had "a common legal, rather than commercial, interest") (internal quotation marks and citations omitted); see also Strougo v. BEA Assocs., 199 F.R.D. 515, 520 (S.D.N.Y. 2001) (noting that "[t]he key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial") (internal quotation marks and citations omitted). As such, Respondents are directed to produce to B&C the communications that were shared with Schur in Category 3.

## **CONCLUSION**

In sum, although Germany has the predominant interest in the subject documents under the touch base test, principles of comity nonetheless counsel in favor of application of U.S. privilege law. Although the subject communications are protected by the attorney-client privilege, the privilege was waived for the 28 documents discussed herein because those communications were shared with non-attorney third parties. Respondents are directed to produce those 28 documents to B&C. The remaining documents challenged by B&C were properly withheld as privileged by Respondents.

**SO ORDERED.**

DATED:    New York, New York
         July 1, 2025

_____
VALERIE FIGUEREDO
United States Magistrate Judge